IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SHIPPITSA LIMITED,                     §
                                       §
                        Plaintiff,     §
                                       §   Civil Action No. 3:18-CV-1036-D
VS.                                    §
                                       §
ANDREW JON SLACK, et al.,              §
                                       §
                        Defendants.    §

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Shippitsa Limited ("Shippitsa") for trademark infringement

and related claims, defendants MoreNiche Limited ("MoreNiche") and Andrew Jon Slack

("Slack") move to dismiss for lack of personal jurisdiction, improper venue, and failure to

state a claim on which relief can be granted.[1]  They also move for sanctions under Fed. R.

Civ. P. 11.  The principal question presented is whether MoreNiche and Slack, by operating

a "redirect" webpage that is accessible to Texas residents, have established sufficient

contacts with this forum to support the exercise of specific personal jurisdiction over them.

Concluding that they have not, the court grants the motions to dismiss and enters final

judgment under Rule 54(b) dismissing Shippitsa's actions against MoreNiche and Slack for

lack of personal jurisdiction.  The court denies the motion for sanctions filed by MoreNiche

and Slack because it concludes that Shippitsa's legal contentions in support of personal

_____

[1]A third defendant, Wolfson Berg Limited ("Wolfson Berg"), also moves to dismiss,
but the court is not deciding that motion today.  Instead, it is authorizing Shippitsa to obtain
limited jurisdictional discovery from Wolfson Berg.

jurisdiction are not objectively unreasonable.

I

According to Shippitsa's complaint, it manufactures a dietary supplement called Phen375, which it sells through its website at the domain name phen375.com. Shippitsa is organized under the laws of the United Kingdom ("UK"), is registered in Scotland, and maintains its headquarters in Scotland. It owns the U.S. registered trademark for the standard characters "PHEN375." Compl. ¶ 10.

Shippitsa advertises Phen375 online via an "affiliate marketing network system." *Id.* ¶ 16. An affiliate marketing network is comprised of three types of entities: advertisers, who sell products or services; affiliates, who operate websites that attract visitors with their content (such as product reviews); and an affiliate marketing network company, which acts as an intermediary between the advertisers and the affiliates. Affiliates, through the websites they operate, provide information about the advertisers' products. They also provide "affiliate links" that take users to the advertisers' own websites. P. Resp. App. 047.[2] When a user clicks on an affiliate link and then buys a product from the advertiser, the affiliate receives a commission on the sale. The affiliate marketing network company tracks visitors and coordinates commission payments among companies within the network.

In 2011 Shippitsa contracted with MoreNiche (the "Contract") to join MoreNiche's

_____

[2]Shippitsa has filed separate opposition responses to the motions to dismiss and for sanctions, but each opposition is accompanied by an identical appendix. The court's citations to "P. Resp. App." are to any and all of these identical appendices.

affiliate marketing network as an advertiser.[3]  MoreNiche is organized under the laws of, and

is headquartered in, the UK.  Slack, a citizen and resident of the UK, is MoreNiche's founder

and director.  Shippitsa advertised its Phen375 product through MoreNiche's network until

March 2018, when the Contract between the two companies expired.  The Contract provided

that "[f]ollowing termination of this agreement MoreNiche has the right to re-direct visitors

promoting your campaigns to whatever destination it sees fit."  P. Resp. App. 038.

According to Shippitsa, after the Contract expired, certain affiliate websites continued to

display information about Phen375.[4]  Instead of linking to Shippitsa's phen375.com website,

however, they instead linked visitors to a webpage—mixi.mn—operated by MoreNiche and

Slack.[5]  The mixi.mn webpage consists only of the following lines of text: "Phen375 is no

longer available via this link, we will be redirecting you to an alternative in 5 seconds.  If you

do not want us to do that click here."  Compl. ¶ 25.

------

[3]More precisely, MoreNiche contracted with a company called RDK Holdings S.A., which was later acquired by Sunpyramidhealth S.A.  Shippitsa, in turn, is a franchisee of Sunpyramidhealth S.A.  Because the parties seem to assume that the Contract is fully applicable to Shippitsa, the court—as a shorthand—will refer to the Contract as if it were between Shippitsa and MoreNiche.

[4]The particular websites identified in the complaint are nhscenter.com and myphen375fatburnerreviews.com, operated by now-dismissed Doe Defendants 1 and 2.  According to the declaration of Shippitsa's lead counsel, "[a]fter filing the Complaint, [he] personally verified over 100 websites which included content using the PHEN375 mark[.]"  P. Resp. App. 007.

[5]The domain registration record for mixi.mn lists MoreNiche as the "Registrant Organization" and Slack as the "Registrant Name."  Compl. ¶¶ 27-28; *accord* P. Resp. App. 004.  The complaint alleges that MoreNiche and Slack operate mixi.mn. MoreNiche and Slack have not denied this allegation.

If a visitor waits five seconds, mixi.mn automatically "redirect[s]" the visitor, *id.* ¶ 26—that is, mixi.mn causes the visitor's web browser to connect automatically to another website, *see* P. Resp. App. 003.  At the time Shippitsa filed the instant lawsuit, mixi.mn was sending users to either of two websites operated by defendant Wolfson Berg Limited ("Wolfson Berg"): phenq.com and ph375.com.[6]  Wolfson Berg is a company organized under the laws of Cyprus and is headquartered there.[7]  Through Wolfson Berg's websites, it sells dietary supplements called PhenQ and Ph.375.[8]  Shippitsa alleges that Wolfson Berg uses "a color scheme, package, trade dress, and promotional and advertising materials" in connection with PhenQ and Ph.375 that are confusingly similar to those that Shippitsa uses for Phen375. Compl. ¶ 22.

Shippitsa now sues Slack, MoreNiche, and Wolfson Berg,[9] asserting federal-law claims for trademark infringement, false designation of origin, trademark dilution, cybersquatting, and violations of the Racketeer Influenced and Corrupt Organizations Act.

---

[6]Shippitsa's evidence suggests that, as of May 2018, mixi.mn has stopped redirecting visitors to Wolfson Berg's websites, and instead sends them to google.com.

[7]The complaint alleges that Slack is the founder and an executive of Wolfson Berg, but Slack has denied this allegation via declaration.  Shippitsa has offered no evidence to the contrary.  There being no conflict in the evidence on this point, the court concludes for purposes of today's ruling that Slack is not a founder or executive of Wolfson Berg.  *See Bullion v. Gillespie*, 895 F.2d 213, 216-17 (5th Cir. 1990).

[8]Wolfson Berg admits that it owns the websites phenq.com and ph375.com. Shippitsa's evidence indicates that the Ph.375 website is no longer accessible.

[9]As indicated above, *see supra* note 4, Shippitsa also sued two John Doe defendants. Shippitsa has since dismissed its actions against both defendants without prejudice under Rule 41(a)(1)(A)(i).

Shippitsa also asserts Texas-law claims for tortious interference with a prospective contractual relationship, trademark dilution, and unfair competition. Wolfson Berg, MoreNiche, and Slack have each filed a motion to dismiss. Each motion seeks dismissal on the grounds of lack of personal jurisdiction, improper venue, and failure to state a claim on which relief can be granted. MoreNiche and Slack have also filed a joint motion for Rule 11 sanctions against Shippitsa. The court addresses in this memorandum opinion and order the motions to dismiss and for sanctions filed by MoreNiche and Slack. As noted, the motion to dismiss of Wolfson Berg remains pending while jurisdictional discovery is conducted. *See supra* note 1.

II

The court need only consider MoreNiche and Slack's motions to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. Shippitsa maintains that the operation by Slack and MoreNiche of the mixi.mn website enables this court to assert personal jurisdiction over them.

A

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985); *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985)). The determination whether a federal district court has *in personam* jurisdiction over a nonresident defendant is

bipartite. The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over the defendant would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.*; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that it "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted) (first quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); then quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines (1) the defendant's burden, (2) the forum state's interests, (3) the plaintiff's interests in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' shared interest in fundamental social policies.

*Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

A defendant's contacts with the forum may support either specific or general jurisdiction over the defendant. *Mink*, 190 F.3d at 336. "For the court properly to assert specific personal jurisdiction, the defendant must have 'purposefully directed' his activities at residents of the forum, and the litigation must result from alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum." *Archer & White, Inc. v. Tishler*, 2003 WL 22456806, at *2 (N.D. Tex. Oct. 23, 2003) (Fitzwater, J.) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Id.* (quoting *Mink*, 190 F.3d at 336). "[A] court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (first brackets added) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Shippitsa argues that this court has specific personal jurisdiction over MoreNiche and Slack.

"The district court usually resolves the jurisdictional issue without conducting a hearing." *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993) (footnote omitted).

> When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff

satisfies his burden by presenting a *prima facie* case for personal jurisdiction.

*Latshaw*, 167 F.3d at 211 (footnotes omitted). "This liberal standard, however, does not require the court to credit conclusory allegations, even if they remain uncontradicted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 2000 WL 35615925, at *2 (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996)), *aff'd*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam) (affirming, *inter alia*, this conclusion). Nor is the court limited to considering the facts pleaded in the complaint. *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). Rather, "the district court may receive any combination of the recognized methods of discovery, including affidavits, interrogatories, and depositions to assist it in the jurisdictional analysis." *Tendeka, Inc. v. Glover*, 2014 WL 978308, at *3 (S.D. Tex. Mar. 12, 2014) (Rosenthal, J.) (internal quotations omitted).

B

When specific jurisdiction is based on online interactions via an Internet website, the Fifth Circuit follows the sliding scale adopted in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). *See Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F.Supp.2d 895, 900-01 & n.10 (N.D. Tex. 2000) (Fitzwater, J.) (citing *Mink*, 190 F.3d at 336) (interpreting *Zippo*). *Zippo* requires the court to assess the level of interactivity of the defendant's website. It prescribes different outcomes to the personal jurisdiction question depending on which of following three categories the

- 8 -

website falls into: (1) where a website is nothing more than a passive advertisement, the court must decline to exercise personal jurisdiction; (2) where a website facilitates contractual relationships and the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper; and (3) where a website falls somewhere in between, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the [w]ebsite." *Mink*, 190 F.3d at 336 (quoting *Zippo*, 952 F. Supp. at 1124).

C

The court holds that, under the *Zippo* test, Shippitsa has failed to present a *prima facie* case that the mixi.mn website subjects Slack and MoreNiche to specific personal jurisdiction.

The parties offer starkly different characterizations of where mixi.mn falls on the *Zippo* interactivity scale. MoreNiche and Slack maintain that mixi.mn "was not even a website, let alone an 'interactive website,'" thus placing it on the passive end of the *Zippo* spectrum. Slack Mot. Dism. Br. 7; MoreNiche Mot. Dism. Br. 6. Shippitsa counters that the mixi.mn webpage sits at the opposite terminus of the *Zippo* scale. It contends that, by sending instructions to visitors' web browsers and thereby causing the browsers to connect to another web address, mixi.mn is sufficiently interactive to give rise to personal jurisdiction.[10]

_____

[10]Shippitsa offers opposition evidence showing, at a technical level, how mixi.mn interacts with users' web browsers. But because Shippitsa did not allege these details in its complaint, MoreNiche and Slack challenge whether the court can consider them. MoreNiche and Slack cite cases stating that a plaintiff cannot "amend" its complaint in opposition to a

The mixi.mn webpage contains no advertising and offers no opportunity for visitors to do business with MoreNiche and Slack or otherwise to interact with the host computer. The webpage therefore falls on the passive end of the *Zippo* scale, assuming it is not simply a category 1 passive website that could not support the exercise of personal jurisdiction. Courts in this circuit have asserted personal jurisdiction on the basis of websites that, *inter alia*, allow visitors to purchase products directly, *see, e.g., Am. Eyewear*, 106 F.Supp.2d at 901, or provide a subscription-based online service, *see, e.g., Sefton v. Jew*, 201 F.Supp.2d 730, 740 (W.D. Tex. 2001). A website may fall in the middle of the *Zippo* scale, but will not necessarily give rise to personal jurisdiction, if it allows users to communicate with one another or with the website's owner. *See, e.g., Revell v. Lidov*, 317 F.3d 467, 472 (5th Cir. 2002); *Mothers Against Drunk Driving v. DAMMADD, Inc.*, 2003 WL 292162, at *5 (N.D. Tex. Feb. 7, 2003) (Fish, C.J.). The mixi.mn page does none of this. It is arguably less interactive than even the "passive" website that the Fifth Circuit addressed in *Mink*, which

---

motion to dismiss. *See Roebuck v. Dothan Sec., Inc.*, 515 Fed. Appx. 275, 280 (5th Cir. 2013) (per curiam); *Berry v. Indianapolis Life Ins. Co.*, 600 F.Supp.2d 805, 817 (N.D. Tex. 2009) (Boyle, J.); *Skidmore Energy, Inc. v. KPMG LLP*, 2004 WL 3019097, at *5 (N.D. Tex. Dec. 28, 2004) (Boyle, J.). Defendants' position might have force in the context of a Rule 12(b)(6) motion to dismiss for failure to state a claim. All of the cases that MoreNiche and Slack cite involved Rule 12(b)(6) motions, and it is generally true that "[w]hen deciding a Rule 12(b)(6) motion to dismiss, the district court is limited to the allegations set forth in the complaint." *Roebuck*, 515 Fed. Appx. at 280. But the court is not similarly confined when deciding a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. To the contrary, once the defendant has offered evidence to dispute the personal-jurisdiction allegations in the plaintiff's complaint, it is *incumbent* upon the plaintiff to present its own evidence in support of personal jurisdiction. *See Bullion*, 895 F.2d at 217. Otherwise, the defendant's evidence will be credited as uncontroverted. *See id.*

provided product details, contact information, and mail-in order forms to visitors. *See Mink*, 190 F.3d at 336-37. All mixi.mn does is provide a small amount of information to users—information that users can, by default, view for only five seconds before being redirected to another website, allegedly operated by Wolfson Berg or some other entity, but not by MoreNiche or Slack. The average visitor's interaction with mixi.mn is fleeting, at best. It involves no viewing of advertising or exchanging of information on the mixi.mn webpage itself that is commercial in nature.

Nor does the fact that the mixi.mn webpage sends digital instructions to a visitor's computer render the webpage owner subject to personal jurisdiction. The *Zippo* test focuses on the level of interactivity and commercial nature of the exchange of information that occurs on the website. The court has already explained that the level of interactivity in this case is minimal: an encounter of no more than five seconds. And the mixi.mn webpage does not exchange with the visitor any information that is commercial in nature. It unilaterally provides commercial information (it would be a stretch to call it advertising) by simply advising the visitor that Phen375 is no longer available via the link that the visitor reached, that the visitor will be redirected to an alternative in 5 seconds, and that if the visitor does not want to be redirected, the visitor click on a particular location on the mixi.mn webpage. Cases that have found personal jurisdiction under *Zippo* have involved much greater levels of interactivity and of the exchange of information of a commercial nature. *See, e.g., Monistere v. Losauro*, 2013 WL 6383886, at *7 (E.D. La. Dec. 4, 2013) (acknowledging that website "is highly interactive because it allows users to purchase allegedly infringing

products over the internet."); *Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*, 758 F.Supp.2d 366, 373 (N.D. Tex. 2010) (Fitzwater, C.J.) (classifying website as interactive because it allowed users to order products and to communicate with defendant's sales agents); *Am. Eyewear*, 106 F.Supp.2d at 901 ("Users of this web site interact with the site and [defendant's] employees by using the Internet to submit product order forms that contain credit card and shipping information.").

Shippitsa's contention that it has established personal jurisdiction under the *Zippo* test finds no support in core personal jurisdiction concepts. The *Zippo* court did not create its sliding scale from whole cloth—the test is based on "well developed personal jurisdiction principles." *See Zippo*, 952 F. Supp. at 1124. "Even in the strange realm of Internet-related contacts, the standard for personal jurisdiction remains that a non-resident defendant must have purposefully availed itself of the benefits and protections of the forum's laws such that it should reasonably anticipate being haled into the forum's courts." *Applied Food Sciences, Inc. v. New Star 21, Inc.*, 2009 WL 9120113, at *4 (W.D. Tex. Jan. 23, 2009) (citing *Burger King*, 471 U.S. at 474); *see also Tempur-Pedic*, 758 F.Supp.2d at 375-76 (analyzing, in conjunction with *Zippo* test, whether defendant could reasonably foresee being haled into court on basis of online sales to Texas residents). When a defendant's only contact with a forum is a brief and automatic interaction between the defendant's webpage and a visitor to that page, involving no exchange of information that is commercial in nature, it follows that the plaintiff has failed to establish the level of purposeful availment or foreseeability that is required to satisfy due process.

Shippitsa contends that sending instructions to a computer in a forum can give rise to personal jurisdiction in that forum. It appears to be undisputed, however, that *all* websites that a visitor can access by computer send instructions to the visitor's computer.[11] Something more must be involved. And whether that something more is sufficient to establish personal jurisdiction is determined under the *Zippo* sliding scale, not merely on the basis that the defendant's computer sends instructions to the plaintiff's computer in the forum in which suit is brought. To the extent that Shippitsa's argument relies on the fact that mixi.mn *involuntarily* redirects the user, Shippitsa does not explain why voluntariness matters in the context of the *Zippo* sliding scale of interactivity; if anything, a website that automatically redirects visitors without awaiting their input is *less* interactive than one that, say, features a link on which a user must click to be redirected.

Even if mixi.mn were the kind of website that could support the assertion of personal jurisdiction, Shippitsa must offer evidence or non-conclusory allegations that Texas residents have actually interacted with the website. Courts in this circuit have held that the mere possibility that forum residents have visited a website—even an extremely interactive one—does not alone constitute minimum contacts between the website's owner and the forum. *See, e.g., Monistere*, 2013 WL 6383886, at *7 ("[T]he Court agrees . . . that personal jurisdiction may not be established by the mere *possibility* that Louisiana residents may

---

[11]Shippitsa's own evidence includes examples of this. *See* P. Resp. App. 062 ("The response from mixi.mn also included a response HTML payload that caused my browser to display [a] message[.]"); P. Resp. App. 063 ("My browser received a response back from phenq.com which included an HTML payload that displayed the phenq.com home page.").

purchase products on Defendants' website[.]"); *Interactive Life Forms, LLC v. Weng*, 2013 WL 12116148, at *5 (W.D. Tex. Apr. 8, 2013) ("Defendants appear to have *not* accepted customers from Texas, and *not* shipped products to Texas."); *Applied Food Sciences*, 2009 WL 9120113, at *4 ("[W]here those corporations are not alleged to have conducted electronic commerce with anyone in Texas, not alleged to have directed any of their advertising or Internet activities specifically towards Texas, and not alleged to have sold any infringing products to individuals in Texas, the maintenance of personal jurisdiction over Defendants would be unreasonable."); *Monkey Boy Graphix, Inc. v. Anton Sport, Inc.*, 2008 WL 11349966, at *7 (N.D. Tex. Aug. 20, 2008) (Ramirez, J.) ("There is no evidence of any sales of the allegedly infringing images to Texas residents, nor is there any evidence that the Corporate Defendants have been interacting with anyone in Texas through [their] website."), *rec. adopted*, 2008 WL 11349845, at *1 (N.D. Tex. Sept. 17, 2008) (O'Connor, J.); *People Sols., Inc. v. People Sols., Inc.*, 2000 WL 1030619, at *4 (N.D. Tex. July 25, 2000) (Lindsay, J.) ("Although Defendant appears to have the potential to interact with, sell products to, and contract with Texas residents on its web site, the evidence does not support a finding that this level of activity has taken place."); *Origin Instruments Corp. v. Adaptive Comput. Sys., Inc.*, 1999 WL 76794, at *4 (N.D. Tex. Feb. 3, 1999) (Lindsay, J.) ("[T]here is no evidence in the record to establish that Defendant has been interacting with anyone in Texas through its web site."); *see also Tempur-Pedic*, 758 F.Supp.2d at 374-75 (asserting personal jurisdiction over website owner because evidence suggested at least two online sales had been made to Texas residents); *Am. Eyewear*, 106 F.Supp.2d at 902 ("In today's case, [plaintiff] has shown that

[defendant] does more than merely maintain a web site; it regularly transacts business with Texas residents over its 'peepers.com' web site.").

*Zippo* emphasizes the importance of a website operator's "conscious choice to conduct business with the residents of a forum state"—which in that case is demonstrated by the defendant's "repeatedly and consciously [choosing] to process [forum] residents' applications and to assign them passwords." *Zippo*, 952 F. Supp. at 1126. A person or company that wishes to avoid being haled into court in a particular jurisdiction can simply choose not to interact with forum residents online. *Id.* at 1126-27. It follows that where a defendant has not interacted at all with residents of a forum, consciously or otherwise, personal jurisdiction is improper. Because the plaintiff bears the burden of establishing a *prima facie* case for personal jurisdiction, the plaintiff must allege or show that the defendant has in fact interacted with forum residents.[12]

Shippitsa does offer evidence that at least two people have visited mixi.mn from within Texas: Shippitsa's counsel, and a private investigator whom Shippitsa hired. But a plaintiff cannot unilaterally manufacture jurisdiction by instructing its own agents, with litigation in mind, to visit a defendant's allegedly infringing website. *See 721 Bourbon, Inc.*

---

[12]The court does not foreclose the possibility that a defendant who specifically targets a forum with its website might be subject to personal jurisdiction there, even if no forum resident ever sees the website. *See, e.g., Applied Food Sciences*, 2009 WL 9120113, at *4 (declining to exercise personal jurisdiction because, *inter alia*, plaintiffs did not "allege[] any Texas-specific direction of the [defendants'] websites."). But in the instant case, MoreNiche and Slack deny that the mixi.mn page specifically targets Texas residents, and Shippitsa offers no evidence to the contrary.

*v. House of Auth, LLC*, 140 F.Supp.3d 586, 595-97 (E.D. La. 2015); *Monistere*, 2013 WL 6383886, at \*7; *Weng*, 2013 WL 12116148, at \*5; *QR Spex, Inc. v. Motorola, Inc.*, 507 F.Supp.2d 650, 661 (E.D. Tex. 2007); *James Avery Craftsman, Inc. v. Lugosch*, 486 F.Supp.2d 595, 599 (W.D. Tex. 2007); *see also Tempur-Pedic*, 758 F.Supp.2d at 374-75 (disregarding, *arguendo*, online sale to plaintiff's investigator in personal jurisdiction analysis). *But see Action Tapes, Inc. v. Ebert*, 2006 WL 305769, at \*5 (N.D. Tex. Feb. 9, 2006) (Fish, C.J.) ("Rather than creating an alias and purchasing the designs as it did via eBay, [plaintiff] has produced no evidence that it engaged in a similar transaction with [defendant's website]."). Were it so, "plaintiffs would be granted the power to manufacture personal jurisdiction in a forum that presents hardship and inconvenience to defendants." *Lugosch*, 486 F.Supp.2d at 599 (internal quotation marks omitted). Such artificial contacts are therefore insufficient to support personal jurisdiction.[13]

## D

Shippitsa does not argue that there is any other basis, besides the mixi.mn webpage, for exercising personal jurisdiction over Slack and MoreNiche. Because Shippitsa has clearly failed to make a *prima facie* showing that mixi.mn is sufficiently interactive to support personal jurisdiction, the court declines to permit Shippitsa to conduct jurisdictional discovery. *See, e.g., Valtech Sols., Inc. v. Davenport*, 2016 WL 2958927, at \*2 (N.D. Tex.

---

[13]Because Slack and MoreNiche do not have sufficient minimum contacts with Texas to support personal jurisdiction, the court need not decide whether exercising jurisdiction over them would comport with fair play and substantial justice. *See Panda Brandywine*, 253 F.3d at 870.

May 23, 2016) (Fitzwater, J.) ("When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000))).

Nor is Shippitsa entitled to amend its complaint for purposes of establishing that the court can exercise personal jurisdiction. Shippitsa requests leave to amend in footnotes on the last pages of each of its response briefs. But assuming *arguendo* that these requests should be treated as motions,[14] Shippitsa has failed to explain what, if anything, amending the complaint would accomplish; it has already had an opportunity to present evidence in support of personal jurisdiction and has failed to make the required *prima facie* showing. *See Seitz v. Envirotech Sys. Worldwide Inc.*, 513 F.Supp.2d 855, 866 (S.D. Tex. June 19, 2007) (Rosenthal, J.) ("[Plaintiff's] evidence, with the allegations in the amended complaint, was insufficient to show personal jurisdiction as to [defendants]. On the present record, amendment would be both late and futile."); *see also, e.g., Bustos v. Lennon*, 538 Fed. Appx. 565, 569 (5th Cir. 2013) (per curiam) (affirming denial, on futility grounds, of motion to amend complaint to correct jurisdictional defects); *Blue Spike, LLC v. Tex. Instruments, Inc.*, 2014 WL 11848753, at *3 (E.D. Tex. Mar. 5, 2014) ("It is not Plaintiff's underlying

---

[14]"[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought, *cf.* [Rule] 7(b)—does not constitute a motion within the contemplation of Rule 15(a)." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (first alteration in original) (quoting *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)); *In re Alamosa Holdings, Inc.*, 382 F.Supp.2d 832, 867 n.9 (N.D. Tex. 2005) (Cummings, J.).

allegations that fall short. Instead, Plaintiff's theory of jurisdiction is flawed.").

The court therefore denies Shippitsa's request for jurisdictional discovery against MoreNiche and Slack, denies Shippitsa's request for leave to amend its complaint, and dismisses Shippitsa's actions against MoreNiche and Slack without prejudice for lack of personal jurisdiction by Rule 54(b) final judgment filed today.

### III

The court next considers MoreNiche and Slack's motion for Rule 11 sanctions. MoreNiche and Slack maintain that Shippitsa had no good-faith factual or legal basis for its personal jurisdiction and venue allegations, or for bringing the present lawsuit despite the contractual provision permitting MoreNiche "to re-direct visitors promoting [Shippitsa's] campaigns to whatever destination it sees fit." P. Resp. App. 038.

### A

Rule 11(b) provides that, by presenting to the court a pleading, motion, or other paper, an attorney is certifying that to the best of the attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing of existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support

after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Rule 11(b).

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). An attorney has a duty to conduct a "reasonable inquiry into the facts and law of a case at the time [at] which [he] affixes [his] signature on any papers to the court." *Mercury Air Grp., Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001). This court applies a "snapshot" rule: sanctions under Rule 11 cannot be imposed "merely for the eventual failure of a claim; rather, sanctions are to be applied only where, *at the time of the filing*, the position advocated is unwarranted." *Matta v. May*, 118 F.3d 410, 415 (5th Cir. 1997) (emphasis added). When Rule 11 has been violated, the court must "carefully choose sanctions that foster the appropriate purpose of the rule, depending upon the parties, the violation, and the nature of the case." *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 877 (5th Cir. 1988) (en banc).

B

The court holds that Shippitsa did not violate Rule 11. MoreNiche and Slack do not specify the subsection of Rule 11 on which their motion relies, but their argument appears

to be based either on Rule 11(b)(2) or on Rule 11(b)(3), or possibly on both.[15]

1

Under Rule 11(b)(2), "[t]he essential issue is whether the signatories of [the filing] fulfilled their duty of reasonable inquiry into the relevant law." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 793 (5th Cir. 1993). In determining whether an attorney has made a reasonable inquiry into the law, the court may consider: "the time available to the attorney to prepare the document; the plausibility of the legal view contained in the document; the pro se status of the litigant; and the complexity of the legal and factual issues raised." *Thomas*, 836 F.2d at 875-76.

Sanctions are appropriate under Rule 11(b)(2) when a party advocates a legal contention that is objectively unreasonable. *See Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016) ("An attorney's conduct is judged under each standard with an objective, not a subjective, standard of reasonableness."). "[A] trial court should not impose Rule 11 sanctions for advocacy of a plausible legal theory, particularly where . . . the law is arguably unclear." *Id.* (ellipsis in original) (quoting *CJC Holdings*, 989 F.2d at 794). "[T]he law concerning the permissible scope of personal jurisdiction based on Internet use is still developing." 1 James R. Pratt, III & Bruce J. McKee, *Litigating Tort Cases* § 3:24

---

[15]The allegations that MoreNiche and Slack are challenging—that the court has personal jurisdiction over MoreNiche and Slack, that venue is proper here, and that Shippitsa's claims are not barred by contract—appear to be mixed questions of fact and law. They are not purely factual contentions, nor are they abstract statements of law. The court will therefore analyze the motion for sanctions under both the Rule 11(b)(2) and Rule 11(b)(3) paradigms.

(2018).  It is in the context of this developing area of law that Shippitsa conceived its theory of personal jurisdiction and venue.  This theory is not objectively unreasonable.  The court is not aware of any Fifth Circuit case that expressly and directly forecloses Shippitsa's argument that a webpage that interacts with a visitor's computer is "interactive" in the sense contemplated by *Zippo*.  And while the weight of authority in this circuit holds that a plaintiff must allege or show actual, non-manufactured interactions with the defendant's website by Texas residents, the Fifth Circuit itself apparently has not yet held the same.  *Cf. Snow Ingredients, Inc. v. SnoWizard, Inc.*, 2014 WL 1329804, at *9 (E.D. La. Mar. 28, 2014) (denying motion for sanctions because, *inter alia*, Fifth Circuit had never clearly foreclosed plaintiff's argument), *aff'd*, 833 F.3d 512 (5th Cir. 2016).  Although the court ultimately holds that it lacks personal jurisdiction over MoreNiche and Slack, "Rule 11 does not require that the legal theory espoused in a filing prevail."  *CJC Holdings*, 989 F.2d at 793.

"If abused, Rule 11 may chill attorneys' enthusiasm and stifle the creativity of litigants in pursuing novel factual or legal theories.  As a result, all will suffer."  *Thomas*, 836 F.2d at 885; *accord* Rule 11 advisory committee's note (1983 amendment).  Mindful of this admonition, the court concludes that Shippitsa's theory—while ultimately unpersuasive—is not objectively unreasonable.

Nor is Shippitsa's interpretation of the Contract objectively unreasonable.  Relying on English law,[16] Shippitsa contends that because it would defy "business common sense"

_____

[16]The Contract states that it is governed by the laws of England.  A federal court applies the conflict-of-laws rules of the forum in which it sits.  *Roberts v. Energy Dev. Corp.*,

to read the Contract to permit MoreNiche to infringe Shippitsa's trademarks, the court should

reject such a reading.  P. Resp. MoreNiche 11 (quoting *Rainy Sky S.A. v. Kookmin Bank*

[2011] UKSC 50, [16]).[17]  MoreNiche and Slack cite a later case from the Supreme Court of

the United Kingdom clarifying that, where a contract's language is unambiguous, courts

should not use "commercial common sense" to justify ignoring the words' plain meaning.

*See Arnold v. Britton* [2015] UKSC 36, [17]-[20].   But *Arnold* also emphasizes that

"commercial common sense is a very important factor to take into account when interpreting

a contract," and acknowledges that, in a "very unusual case," a court might be justified in

departing even from clear language.  *See id.* at [17], [20].  It is therefore at least reasonable

_____

104 F.3d 782, 786 (5th Cir. 1997).  Under Texas law, a choice-of-law clause is enforceable unless the chosen law has no connection to the parties or the contract, or unless application of the chosen law would offend a fundamental public policy of the forum state.  *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990).  Here, where Shippitsa, MoreNiche, and Slack are all based in the UK, and where no one has argued that applying English law would violate Texas public policy, the court will assume *arguendo* that English law applies.

[17]Shippitsa's counsel did not actually research English law before filing the complaint; he instead relied on general principles of contract interpretation.  It was only later that he unearthed the English case on which Shippitsa now relies.  But the court can take this case into account despite the snapshot rule.  It is well-established that "sanctions can be imposed only if [counsel's] position can 'fairly be said to be unreasonable from the point of view of both existing law and its possible extension, modification, or reversal.'"  *FDIC v. Calhoun*, 34 F.3d 1291, 1296 (5th Cir. 1994) (quoting *Smith Int'l, Inc. v. Tex. Commerce Bank*, 844 F.2d 1193, 1200 (5th Cir. 1988)).  The court can consider cases that support counsel's legal position even if counsel had not actually discovered those cases at the time he signed the complaint.  This is because, regardless whether counsel was aware of these cases when signing the paper in question, they are evidence that counsel's position was objectively reasonable.  Moreover, if the court refused to consider these authorities, it would run the risk of essentially applying a subjective, rather than objective, standard of reasonableness—contrary to Fifth Circuit precedent.  *See id.*

for Shippitsa to rest its argument on the idea of commercial common sense. Although the court takes no position on whether Shippitsa's interpretation of the Contract is correct under English law, Shippitsa has advanced an objectively reasonable argument that its claim is not barred by contract. Sanctions are therefore unwarranted.

Nor will the court sanction Shippitsa for failing to mention in its complaint the "whatever destination it sees fit" provision of the Contract. P. Resp. App. 038. "Rule 11 addresses what a party or its attorney knows at the time of filing, not what it chooses to include in those filings." *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F.Supp.2d 766, 781 (S.D. Tex. 2010). Rule 11(b) does not expressly permit the court to sanction a plaintiff for failing to disclose all relevant facts in its complaint. The court will not go beyond the bounds of Rule 11 by penalizing Shippitsa on this basis.

2

When assessing whether sanctions should be imposed under Rule 11(b)(3), the court focuses on the reasonableness of counsel's pre-filing inquiry into the facts. *See, e.g., SEC v. Faulkner*, 2018 WL 3708426, at *3-4 (N.D. Tex. Aug. 3, 2018) (Fitzwater, J.); *Port of S. La. v. Tri-Parish Indus., Inc.*, 927 F.Supp.2d 332, 347-48 (E.D. La. 2013); *Jenkins v. Methodist Hosps. of Dall. Inc.*, 2004 WL 2871006, at *1-2 (N.D. Tex. Dec. 14, 2004) (Lynn, J.). The factors to be considered are:

> (1) the time available to the signer for investigation; (2) the extent of the attorney's reliance upon his client for the factual support for the document; (3) the feasibility of pre-filing investigation; (4) whether the signing attorney accepted the case from another member of the bar or forwarding attorney; (5) the

> complexity of the factual and legal issues; and (6) the extent to
> which development of the factual circumstances underlying the
> claim requires discovery.

*Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1026 (5th Cir. 1994) (citing *Thomas*,

836 F.2d at 875).

The complaint's signatory, William D. Cramer, Esquire ("Cramer"), began his pre-filing inquiry with a list of potentially-infringing websites provided by Shippitsa itself. Working from this list, Cramer independently documented dozens of websites allegedly displaying the Phen375 trademark that linked users, via the mixi.mn redirect webpage, to either of the two websites operated by Wolfson Berg. He used specialized tools to observe the series of HTTP messages sent between his computer and the websites to which he connected, including mixi.mn. And he was able to determine that the mixi.mn webpage was registered to MoreNiche and Slack. On the basis of this inquiry and his understanding of the law, Cramer concluded that this court has personal jurisdiction over MoreNiche and Slack. Moreover, before filing the complaint, Cramer personally read the Contract and interpreted it in light of his understanding of the general principles of contract law.

The court holds that Cramer did not fail to conduct a reasonable inquiry into the relevant facts. Turning to the first *Childs* factor, the court observes that Cramer's pre-filing investigation was subject to some time constraints, because Shippitsa was allegedly losing sales due to the infringing websites. Under the circumstances, his investigation was sufficiently thorough. Second, Cramer performed his pre-filing inquiry independently of Shippitsa, although he used information provided by Shippitsa as a starting point. Third, an

investigation was not only feasible, but was actually conducted. Fourth, counsel did not rely on the work of another attorney, but instead properly performed his own inquiry into the facts. Fifth, Cramer's erroneous conclusion is understandable in light of the complicated subject matter of this case: the intersection between technology and personal jurisdiction. Sixth, it was not unreasonable to think that discovery would shed additional light on the extent to which Texas residents may have visited mixi.mn. Sanctions on the basis of Rule 11(b)(3) are therefore unwarranted.

C

Shippitsa asks the court to award it the costs it has incurred in responding to the Rule 11 motion, contending that the motion for sanctions is itself frivolous. The court declines this request.

Rule 11(c)(2) provides that, "[i]f warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred" for litigating a Rule 11 motion.

> An award of reasonable expenses under Rule 11(c)(2) is not a sanction for violating Rule 11(b). A court is therefore not required, in considering a request for reasonable expenses pursuant to Rule 11(c)(2), to apply the substantive requirements of Rule 11(c)(4)-(6). Instead, the court applies the requirements of Rule 11(c)(2) itself, which provides that the award of expenses to the prevailing party must be "warranted" and "reasonable."

*SEC v. Faulkner*, 2018 WL 5924042, at *4 (N.D. Tex. Nov. 13, 2018) (Fitzwater, J.) (citations and some internal quotation marks omitted) (quoting *Vanliner Ins. Co. v.*

*DerMargosian*, 2014 WL 1632181, at *1 (N.D. Tex. Apr. 24, 2014) (Fitzwater, C.J.)).

The arguments supporting the motion for sanctions are essentially identical to arguments that MoreNiche and Slack have already presented in their respective motions to dismiss. This court has awarded expenses to a prevailing nonmovant where the motion for sanctions, which parroted the movant's argument for dismissal, was "frivolous" and "devoid of any good-faith arguments." *See Vanliner*, 2014 WL 1632181, at *2. But unlike in *Vanliner*, the arguments in the instant motion for sanctions are not frivolous—they persuaded the court to dismiss Shippitsa's claims against MoreNiche and Slack. The court therefore will not award expenses to Shippitsa on the proffered rationale that the Rule 11 motion is itself frivolous.[18]

*     *     *

For the foregoing reasons, the court grants MoreNiche's motion to dismiss, grants Slack's motion to dismiss, denies MoreNiche and Slack's motion for Rule 11 sanctions, and dismisses without prejudice Shippitsa's actions against MoreNiche and Slack by Rule 54(b) final judgment filed today. Because Wolfson Berg's motion to dismiss has not yet been

---

[18]The court is not suggesting that a Rule 11 motion *must* be frivolous, or otherwise violate Rule 11, to warrant an award of expenses. "There should be something negative . . . in the losing party's conduct, but it does not have to be so serious that sanctions are appropriate." *Adhikari v. Daoud & Partners*, 2017 WL 5904782, at *8 (S.D. Tex. Nov. 30, 2017); *see also Vanliner*, 2014 WL 1632181, at *2 ("[A]lthough the [defendants'] amended motion need not have been frivolous to warrant a fee award under Rule 11(c)(2), the fact that it was frivolous informs the court's finding that a fee award is warranted.").

resolved, the stay of discovery[19] remains in place—except to the extent expressly provided by the court's order today permitting limited jurisdictional discovery against Wolfson Berg.[20]

**SO ORDERED**.

January 22, 2019.

SIDNEY A. FITZWATER
SENIOR JUDGE

---

[19]On October 30, 2018 the court ordered a stay of discovery pending a decision on defendants' motions to dismiss.

[20]On April 27, 2018 Shippitsa filed a motion for temporary restraining order ("TRO") and preliminary injunction. In orders filed the same day, the court carried the TRO motion pending consideration of the motion for preliminary injunction and scheduled Shippitsa's preliminary injunction for consideration on the papers. Because the motion seeks relief against Slack and MoreNiche, not Wolfson Berg, and the court is today dismissing Shippitsa's actions against Slack and MoreNiche, the court denies the motions for a TRO and preliminary injunction without prejudice as moot.