IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SHIPPITSA LIMITED, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:18-CV-1036-D |
| VS. § | |
| § | |
| ANDREW JON SLACK, et al., § | |
| § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

In this action for trademark infringement and related claims, plaintiff Shippitsa Limited ("Shippitsa") moves the court to reconsider its memorandum opinion and order dismissing Shippitsa's claims against defendants MoreNiche Limited ("MoreNiche") and Andrew Jon Slack ("Slack") for lack of personal jurisdiction. *See Shippitsa Ltd. v. Slack*, 2019 WL 277613, at *1 (N.D. Tex. Jan. 22, 2019) (Fitzwater, J.) ("*Shippitsa I*"). Shippitsa contends that, in conducting its minimum-contacts analysis, the court committed a manifest error of fact. Because Shippitsa's motion raises new arguments that could have been raised before, and because these arguments lack merit, the court denies the motion.

I

In August 2018 MoreNiche and Slack moved to dismiss Shippitsa's claims against them on the ground, *inter alia*, that this court lacks personal jurisdiction over them. The court granted their motions. *See Shippitsa I*, 2019 WL 277613, at *1. In doing so, the court rejected Shippitsa's theory of personal jurisdiction: that MoreNiche and Slack have the

required minimum contacts with this forum because their webpage—mixi.mn—caused visitors' web browsers—including web browsers located in this district[1]—to connect automatically to a different website. *See id.* at *4.

The court applied the test from *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), as adopted by the Fifth Circuit in *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999). *See Shippitsa I*, 2019 WL 277613, at *4.[2] Applying this analysis, the court concluded that mixi.mn is not sufficiently commercial or interactive to support personal jurisdiction:

> All mixi.mn does is provide a small amount of information to users—information that users can, by default, view for only five seconds before being redirected to another website, allegedly operated by [defendant] Wolfson Berg [Limited] or some other entity, but not by MoreNiche or Slack. The average visitor's interaction with mixi.mn is fleeting, at best. It involves no viewing of advertising or exchanging of information on the mixi.mn webpage itself that is commercial in nature.

*Id.* The court expressly held that "the fact that the mixi.mn webpage sends digital instructions to a visitor's computer [does not] render the webpage owner subject to personal jurisdiction." *Id.* at *5. From its survey of Fifth Circuit *Zippo* precedent, the court was aware of no examples in which personal jurisdiction rested on technical instructions sent to

---

[1] As the court previously observed, Shippitsa has not provided any evidence or non-conclusory allegations that anyone from Texas (other than Shippitsa's agents) actually visited mixi.mn. *See Shippitsa I*, 2019 WL 277613, at *5. But because doing so does not affect the outcome of the motion for reconsideration, the court will assume *arguendo* that Texas residents have accessed mixi.mn.

[2] The *Zippo* test is described *infra* at § III(A)(2).

the user's web browser, as opposed to the user's ability to interact or to exchange commercial information with the website. *See id.* at *4-5.

Shippitsa now moves for reconsideration, contending that the court's focus on the visible, rather than the invisible, aspects of mixi.mn was a manifest error of fact.

II

"Motions for reconsideration have a narrow purpose and are only appropriate to allow a party to correct manifest errors of law or fact or to present newly discovered evidence." *AMS Staff Leasing, NA, Ltd. v. Associated Contract Truckmen, Inc.*, 2005 WL 3148284, at *3 (N.D. Tex. Nov. 21, 2005) (Fitzwater, J.) (internal quotation marks omitted); *see Kimberly-Clark Corp. v. Cont'l Cas. Co.*, 2006 WL 2468712, at *1 (N.D. Tex. Aug. 25, 2006) (Fitzwater, J.) (stating standard for motion for reconsideration). The same standard applies to a Rule 59(e) motion to alter or amend the judgment. *See, e.g., Schwartz v. Int'l Fed'n of Prof'l & Tech. Eng'rs*, 2008 WL 324133, at *1 (N.D. Tex. Jan. 29, 2008) (Fitzwater, C.J.) (holding that court did not commit manifest error of law or fact, and denying Rule 59(e) motion), *aff'd*, 306 Fed. Appx. 168, 2009 WL 62236 (5th Cir. Jan. 12, 2009). "Such motions are not the proper vehicle for rehashing old arguments or advancing theories of the case that could have been presented earlier." *AMS Staff Leasing*, 2005 WL 3148284, at *3 (internal quotation marks omitted).

III

In its motion for reconsideration, Shippitsa re-urges its argument that mixi.mn can support personal jurisdiction under the *Zippo* test. Shippitsa also cites, for the first time, *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999), and folds the principles from that case into the present minimum-contacts analysis.

A

The court begins with a more thorough, and hopefully more thoughtful, discussion of the applicable law—a discussion necessitated by the difficulties in applying traditional personal-jurisdiction concepts to Internet contacts. *See, e.g.,* Zoe Niesel, *#PersonalJurisdiction: A New Age of Internet Contacts*, 94 Ind. L.J. 103, 116-38 (2019) (highlighting limitations of *Zippo* test for measuring online contacts).

1

The fundamental test for whether a court has personal jurisdiction over a defendant is well-settled.

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985); *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985)). The determination whether a federal district court has *in personam* jurisdiction over a nonresident defendant is bipartite. The court first decides whether the long-arm statute of the state in which it sits

confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *See Mink*, 190 F.3d at 335. Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over the defendant would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.*; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that it "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted) (first quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); then quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines (1) the defendant's burden, (2) the forum state's interests, (3) the plaintiff's interests in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' shared interest in fundamental social policies. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

A defendant's contacts with the forum may support either specific or general

jurisdiction over the defendant. *Mink*, 190 F.3d at 336. "For the court properly to assert specific personal jurisdiction, the defendant must have 'purposefully directed' his activities at residents of the forum, and the litigation must result from alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum." *Archer & White, Inc. v. Tishler*, 2003 WL 22456806, at *2 (N.D. Tex. Oct. 23, 2003) (Fitzwater, J.) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Id.* (quoting *Mink*, 190 F.3d at 336). "[A] court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (first brackets added) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Shippitsa argues that this court has specific personal jurisdiction over MoreNiche and Slack.

"The district court usually resolves the jurisdictional issue without conducting a hearing." *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993) (footnote omitted).

> When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction.

*Latshaw*, 167 F.3d at 211 (footnotes omitted). "This liberal standard, however, does not

require the court to credit conclusory allegations, even if they remain uncontradicted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 2000 WL 35615925, at *2 (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996)), *aff'd*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam) (affirming, *inter alia*, this conclusion). Nor is the court limited to considering the facts pleaded in the complaint. *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). Rather, "the district court may receive any combination of the recognized methods of discovery, including affidavits, interrogatories, and depositions to assist it in the jurisdictional analysis." *Tendeka, Inc. v. Glover*, 2014 WL 978308, at *3 (S.D. Tex. Mar. 12, 2014) (Rosenthal, J.) (internal quotations omitted).

2

When specific jurisdiction is based on online interactions via an Internet website, the Fifth Circuit is guided by the sliding scale adopted in *Zippo*, 952 F. Supp. at 1124. *See Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F.Supp.2d 895, 900-01 & n.10 (N.D. Tex. 2000) (Fitzwater, J.) (citing *Mink*, 190 F.3d at 336) (interpreting *Zippo*). *Zippo* requires the court to assess the level of interactivity of the defendant's website. It prescribes different outcomes to the personal jurisdiction question depending on which of the following three categories the website falls into: (1) where a website is nothing more than a passive advertisement, the court must decline to exercise personal jurisdiction; (2) where a website facilitates contractual relationships and the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper; and (3) where a website falls

somewhere in between, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the [w]ebsite." *Mink*, 190 F.3d at 336 (quoting *Zippo*, 952 F. Supp. at 1124).

As this court noted in *Shippitsa I*, "[t]he *Zippo* court did not create its sliding scale from whole cloth—the test is based on 'well developed personal jurisdiction principles.'" *Shippitsa I*, 2019 WL 277613, at *5 (quoting *Zippo*, 952 F. Supp. at 1124). "Even in the strange realm of Internet-related contacts, the standard for personal jurisdiction remains that a non-resident defendant must have purposefully availed itself of the benefits and protections of the forum's laws such that it should reasonably anticipate being haled into the forum's courts." *Id.* (quoting *Applied Food Scis., Inc. v. New Star 21, Inc.*, 2009 WL 9120113, at *4 (W.D. Tex. Jan. 23, 2009)). Thus while *Zippo* provides a helpful framework in which to analyze online contacts, it does not supplant the Due Process Clause or the animating principles of personal-jurisdiction jurisprudence. *See, e.g., Pervasive Software Inc. v. Lexware GmbH & Co. Kg*, 688 F.3d 214, 226-28 & n.7 (5th Cir. 2012) (acknowledging that "interactivity along the *Zippo* sliding scale can be an important factor in an internet-based personal jurisdiction analysis," but declining to apply *Zippo* and instead engaging in a more holistic analysis of defendant's Internet contacts); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007) ("While analyzing a defendant's conduct under the *Zippo* sliding scale of interactivity may help frame the jurisdictional inquiry in some cases . . . it does not amount to a separate framework for analyzing internet-based jurisdiction." (internal quotation marks omitted)); *Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*, 758 F.Supp.2d 366, 375-77

(N.D. Tex. 2010) (Fitzwater, C.J.) (analyzing, in conjunction with *Zippo* test, whether defendant could reasonably foresee being haled into court on basis of online sales to Texas residents). Put another way, "[t]he exercise of personal jurisdiction arising from Internet activities should conform to first principles of jurisdiction." Dennis T. Yokoyama, *You Can't Always Use the* Zippo *Code*, 54 DePaul L. Rev. 1147, 1149 (2005).

The *Zippo* framework nonetheless has its uses. It averts the risk that a defendant, merely by operating a globally-accessible website, might be subject to global personal jurisdiction—without any opportunity "to structure [its] primary conduct with some minimum assurance as to where that conduct will and will not render [it] liable to suit," *World-Wide Volkswagen*, 444 U.S. at 297. The D.C. Circuit, in an early Internet-contacts case, explained the problem succinctly:

> When stripped to its core, [plaintiff]'s theory of jurisdiction rests on the claim that, because the defendants have acted to maximize usage of their websites in the District, mere accessibility of the defendants' websites establishes the necessary "minimum contacts" with this forum. This theory simply cannot hold water. Indeed, under this view, personal jurisdiction in Internet-related cases would almost always be found in any forum in the country. We do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction. The Due Process Clause exists, in part, to give "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." In the context of the Internet, [plaintiff]'s expansive theory of personal jurisdiction would shred these constitutional assurances out of practical existence. Our sister circuits have not accepted such an approach, and neither shall we.

*GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000) (citations omitted). The *Zippo* framework recognizes that due process cannot support this result.

*Zippo* instead comports with core personal-jurisdiction principles by requiring "evidence of purposeful conduct" by the defendant. *Pervasive Software*, 688 F.3d at 227 n.7. It is well-established that "[a] plaintiff's or third party's unilateral activities cannot establish minimum contacts between the defendant and forum state." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). A user's connection to a defendant's website is initiated by the user; the process has been analogized to the defendant's receiving a phone call from a forum resident. *See GTE New Media Servs.*, 199 F.3d at 1349-50. Thus the user-driven process of connecting to a website cannot, without more, support personal jurisdiction. *Cf. Shippitsa I*, 2019 WL 277613, at *5 ("It appears to be undisputed, however, that *all* websites that a visitor can access by computer send instructions to the visitor's computer. Something more must be involved." (footnote omitted)). The lodestars of the *Zippo* analysis—the level of interactivity and the commercial nature of the exchange of information—allow courts to differentiate between defendants who merely maintain a passive Internet presence (to which users then unilaterally connect) and defendants who actively engage, and do business, with residents of the forum state via the Internet.

A corollary principle of personal jurisdiction is that a defendant should be able to structure its conduct so as to predict where it might be haled into court. *See World-Wide Volkswagen*, 444 U.S. at 297. A defendant can control the universe of those with whom it

interacts and does business online; thus the *Zippo* test provides an opportunity for defendants to choose whether to subject themselves to jurisdiction in a particular forum. *See Shippitsa I*, 2019 WL 277613, at *6 ("*Zippo* emphasizes the importance of a website operator's 'conscious choice to conduct business with the residents of a forum state[.]' . . . A person or company that wishes to avoid being haled into court in a particular jurisdiction can simply choose not to interact with forum residents online." (quoting *Zippo*, 952 F. Supp. at 1126)).

Finally, where a defendant uses a website to engage in business transactions, *Zippo* reflects an extension of the principle that "when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper." *Zippo*, 952 F. Supp. at 1124 (citing *Burger King*, 471 U.S. at 475). "Different results should not be reached simply because business is conducted over the Internet." *Id.* Thus where there is "evidence that [the defendant] conducted business over the Internet by engaging in business transactions with forum residents or by entering into contracts over the Internet," personal jurisdiction is proper. *Mink*, 190 F.3d at 337.

*Zippo* is not the only test applicable to Internet contacts. Some courts have applied the so-called "effects test" from *Calder v. Jones*, 465 U.S. 783 (1984), alongside—or in lieu of—the *Zippo* analysis. *See, e.g., Revell v. Lidov*, 317 F.3d 467, 471-76 (5th Cir. 2002) (applying both *Zippo* and *Calder*); *see also Steele v. Burek*, 2014 WL 6612386, at *8-9 (E.D. Mich. Nov. 20, 2014) (collecting cases). The core principle of *Calder* is that, when a defendant is "charged with intentional, tortious conduct directed toward the forum state . . . [it] must 'reasonably anticipate being haled into court there[.]'" *Wien Air*, 195 F.3d at 212

(quoting *Calder*, 465 U.S. at 789-90) (some internal quotation marks omitted). Although *Calder* itself involved a defamation claim, the Fifth Circuit has extended its analysis to other intentional torts. *See id.*

Like *Zippo*, *Calder* does not supersede or replace the Due Process Clause; rather, it is an application of familiar principles of personal jurisdiction in the context of intentional torts. *See Walden v. Fiore*, 571 U.S. 277, 283-86 (2014) (examining traditional personal-jurisdiction cases, such as *World-Wide Volkswagen* and *Burger King*, then stating that "[t]hese same principles apply when intentional torts are involved"); Sarah H. Ludington, *Aiming at the Wrong Target*, 73 Ohio St. L.J. 541, 545-51 (2012) (arguing that *Calder*, which cites traditional minimum-contacts cases, is an application of—rather than a departure from—existing personal-jurisdiction jurisprudence). The limits that due process places on personal jurisdiction apply with equal force when an intentional tort is involved.

B

In light of the above, the court remains unpersuaded that mixi.mn can support the exercise of specific personal jurisdiction under the *Zippo* test.

Shippitsa asserts that, "[t]he [c]ourt errantly considered only what could be seen by the browser's user, and ignored the messages that controlled operation of the browser itself. Shippitsa's allegations against MoreNiche and Slack turn on the 'redirection' and not merely the visible content [of mixi.mn]." Mot. Reconsider 4 n.1 (citation omitted). Shippitsa seems to suggest that the court misunderstood the crux of Shippitsa's personal-jurisdiction argument. The court disagrees. The court in fact acknowledged that "Shippitsa . . . contends

- 12 -

that, by sending instructions to visitors' web browsers and thereby causing the browsers to connect to another web address, mixi.mn is sufficiently interactive to give rise to personal jurisdiction." *Shippitsa I*, 2019 WL 277613, at *4 (footnote omitted). The court's analysis focused on the visible elements of mixi.mn because, according to existing case law in this circuit, those are the elements that matter under the *Zippo* test. *See id.* at *4-5. This was not a manifest error of law or fact.

Moreover, the court's focus on the visible elements of mixi.mn was sensible in light of the underlying principles of personal jurisdiction embodied in the *Zippo* test. The fact that the mixi.mn webpage *automatically* sends redirect instructions to all visitors does not evince "purposeful conduct," on the part of MoreNiche and Slack. *See Pervasive Software*, 688 F.3d at 227 n.7. In contrast, the kinds of interactive features that the *Zippo* test *does* take into account—such as the defendant's processing online order forms and allowing sales associates to exchange messages with visitors, *see, e.g., Tempur-Pedic*, 758 F.Supp.2d at 375-76—require subsequent, purposeful action by the defendant or its agents.[3]

---

[3]A website might also be interactive if it allows users to exchange information with other users via the website. *See, e.g., Revell*, 317 F.3d at 472 ("[I]n this case, any user of the internet can post material to the bulletin board. This means that individuals *send* information to be posted, and *receive* information that others have posted."). But this type of feature does not, without more, necessarily subject the website's operator to personal jurisdiction. *See id.* at 475-76 (declining to exercise personal jurisdiction because allegedly-tortious article posted on message board lacked any Texas-specific direction, and because of "the low-level of interactivity of the internet bulletin board"); *see also, e.g., Binion v. O'Neal*, 95 F.Supp.3d 1055, 1060 (E.D. Mich. 2015) (noting that "courts have applied the *Zippo* test to social media websites and held that personal jurisdiction is not established by merely posting content on websites such as Facebook," because Facebook postings are not sufficiently commercial or interactive); *cf. Hawbecker v. Hall*, 88 F.Supp.3d 723, 729 (W.D. Tex. 2015) (exercising

And if *Zippo* were to take into account the technical instructions sent to a user's web browser, the courts would be faced with a line-drawing problem, because the number of invisible messages exchanged between users and websites is greater today than at the time when *Zippo* was decided. For example, even purely-informational websites now widely use "cookies"—"data that [are] sent from a website's host server and then stored on the user's computer"—for a variety of purposes. Niesel, *supra*, 94 Ind. L.J. at 135; *see also* Ds. Resp. 4 ("[Shippitsa's theory of interactivity] would ensnare within its ambit all use of cookies, temporary internet files, and other 'packaging' that accompanies the visible text of a website for ease of use."). Shippitsa has offered no clear, guiding principle that would allow this or any other court to differentiate among redirect instructions and other types of behind-the-scenes digital communications.

Shippitsa argues for the first time in its motion for reconsideration that MoreNiche and Slack, like the defendant in *Zippo*, are engaging in electronic commerce with forum residents through mixi.mn, thus placing mixi.mn in the second *Zippo* category. In support of this contention, Shippitsa explains the role of mixi.mn in MoreNiche and Slack's affiliate marketing network: visitors to mixi.mn arrive there after clicking on an advertisement for Shippitsa's product on another website; mixi.mn then redirects visitors to a website operated

---

specific jurisdiction on basis of defendant's Facebook page, because page allowed defendant to exchange messages with others *and* because defendant used Facebook page to direct defamatory comments toward Texas residents). Presumably, this is because including such a feature on a webpage does not, on its own, evince "purposeful conduct," *Pervasive Software*, 688 F.3d at 227 n.7, that is directed toward any particular forum.

by Wolfson Berg Limited ("Wolfson Berg"), where they can purchase products; and MoreNiche and Slack benefit financially from sales of Wolfson Berg's products. Shippitsa recounted this same sequence of events in response to MoreNiche and Slack's motions to dismiss, but it failed to argue that mixi.mn is itself a means of engaging in electronic commerce with forum residents. Instead, Shippitsa relied on its characterization of mixi.mn as being highly interactive due to the electronic instructions that the webpage sends to users' browsers. Motions for reconsideration "are not the proper vehicle for . . . advancing theories of the case that could have been presented earlier." *AMS Staff Leasing*, 2005 WL 3148284, at *3 (internal quotation marks omitted).

In any event, "doing business over the Internet," *Zippo*, 952 F. Supp. at 1124, does not include every online activity that financially benefits the defendant. Were it so, even passive online advertisements would give rise to personal jurisdiction—an outcome that is plainly foreclosed by *Mink*, 190 F.3d at 337. Rather, the second *Zippo* category is an extension of the principle that "when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper." *Zippo*, 952 F. Supp. at 1124. In support of this principle, the *Zippo* court cited *Burger King*, in which the defendant reached out to a company headquartered in the forum state and entered into a long-term contractual relationship with that company. *See Burger King*, 471 U.S. at 479-80. Visitors to mixi.mn cannot contract with MoreNiche and Slack via mixi.mn. *See Shippitsa I*, 2019 WL 277613, at *4. Thus here, as in *Mink*, "[t]here was no evidence that [the defendants] conducted business over the Internet by engaging in business

transactions with forum residents or by entering into contracts over the Internet." *Mink*, 190 F.3d at 337. Accordingly, mixi.mn falls, at best, in the middle category of *Zippo*. To support personal jurisdiction, the webpage must be sufficiently interactive in the context of the *Zippo* sliding scale. *See id.* The court has already concluded that it is not.

C

The court is not persuaded by Shippitsa's references to *Wien Air* and the principles advanced therein—principles derived from *Calder*.[4]

Shippitsa cites *Wien Air* for the proposition that "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." Mot. Reconsider 3 (emphasis omitted) (quoting *Wien Air*, 195 F.3d at 213). According to Shippitsa, MoreNiche and Slack committed a number of intentional torts—including, *inter alia*, trademark infringement and false designation of origin—when they redirected Texas residents to Wolfson Berg's websites. These intentional torts thus arose from the digital instructions, or "communications," that mixi.mn sent to visitors' web browsers in Texas. *Id.* at 9.

The instant case, however, is less like *Wien Air* than it is like *Revell*, 317 F.3d 467. In *Wien Air* the Fifth Circuit held that specific jurisdiction could be exercised over a defendant who directed a number of tortious and deceptive letters, faxes, and phone calls to

---

[4]Again, Shippitsa never cited *Wien Air* in its responses to MoreNiche and Slack's motions to dismiss. It is improper for Shippitsa to raise the argument for the first time in a motion to reconsider. *See, e.g., AMS Staff Leasing*, 2005 WL 3148284, at *3.

the plaintiffs in Texas. *Wien Air*, 195 F.3d at 212. The panel based its conclusion on the principle from *Calder* that "intentional, tortious conduct *directed toward the forum state*" can create the minimum contacts necessary to support personal jurisdiction. *Id.* (emphasis added). In *Revell* the Fifth Circuit applied the same principle to an Internet tort, and held that personal jurisdiction was lacking. The panel concluded that an allegedly-defamatory article shared via an online bulletin board did not subject the article's author and the website's owner to specific jurisdiction in Texas, the plaintiff's state of residence. *See Revell*, 317 F.3d at 471-76. The panel reasoned that "the post to the bulletin board here was presumably directed at the entire world, or perhaps just concerned U.S. citizens. But certainly it was not directed specifically at Texas[.]" *Id.* at 475.

As in *Revell*, in the present case the mixi.mn redirect page and the MoreNiche affiliate marketing network more broadly are directed at the entire world. There is nothing in the complaint or the record to indicate that MoreNiche and Slack ever targeted Texas *specifically* with their alleged infringement, just as the defendants in *Revell* did not specifically target Texas readers with their alleged defamation. *See Revell*, 317 F.3d at 475. "[O]ne cannot purposefully avail oneself of 'some forum someplace.'" *Id.* (quoting *Burger King*, 471 U.S. at 474). Thus MoreNiche and Slack's alleged torts lack the Texas-specific direction required to give rise to personal jurisdiction under the *Wien Air* and *Calder* analysis.

For similar reasons, the discussion of personal jurisdiction in *eBay Inc. v. Digital Point Solutions, Inc.*, 608 F.Supp.2d 1156 (N.D. Cal. 2009), which Shippitsa cites, is inapposite. In *eBay* the defendants engaged in a scheme to use illicit software to siphon

funds from the plaintiff's online auction website, ebay.com. *See id.* at 1160. They did this by surreptitiously installing software on a user's personal computer that caused the user's web browser to visit ebay.com. *See id.* The software then prompted ebay.com to place a tracking cookie on the user's computer. *See id.* The cookie in essence fooled the plaintiff's website into believing that the user had been directed to ebay.com after clicking on an advertisement on a website operated by the defendants. *See id.* Thus the cookie caused the plaintiff to pay a commission to the defendants the next time the user engaged in a transaction on ebay.com. *See id.* The *eBay* court concluded, in the context of a venue challenge, that it had personal jurisdiction over the defendants in the plaintiff's home state of California. *See id.* at 1162. The court noted that the defendants caused numerous computers to connect to the plaintiff's computer system—located within the forum—and further caused the plaintiff's computer system to place the offending cookies. *See id.* Additionally, "[t]he alleged harm that resulted from such contacts also occurred in this district because the advertising affiliate data maintained by eBay was corrupted by Defendants' software code." *Id.*

Regardless whether this court agrees or disagrees with *eBay*, that case is readily distinguishable. The defendants in *eBay* intentionally directed communications from numerous jurisdictions toward California and thereby corrupted the plaintiff's data, which were located in California. In other words, the defendants' alleged tort had a California-specific direction that is lacking in the present case—the defendants *purposefully* availed themselves of the California forum such that they could reasonably anticipate being haled

into court *specifically in California*. Meanwhile, the mixi.mn webpage is no more directed at Texas specifically than it is at any other jurisdiction in the world. The court concludes on this basis that *eBay* is factually inapposite.

Finally, under Shippitsa's theory, it could have brought this lawsuit against MoreNiche and Slack in any forum in which a visitor to mixi.mn resides. This proves too much. Just as the defendants in *Revell* did not subject themselves to global personal jurisdiction by making their defamatory article available worldwide, MoreNiche and Slack did not submit themselves to personal jurisdiction everywhere by maintaining an allegedly-infringing webpage. *See Revell*, 317 F.3d at 475. Other courts have come to the same conclusion in the context of trademark-infringement claims like Shippitsa's. *See, e.g., Hearst Corp. v. Goldberger*, 1997 WL 97097, at *20 (S.D.N.Y. Feb. 26, 1997) (rejecting contention that "through their web sites, defendants consciously decided to transmit advertising information to all Internet users, including those in the forum state, thereby (allegedly) committing trademark infringement in the forum state and purposefully availing themselves of the privilege of doing business within the forum state," because this theory "would, in effect, create national (or even worldwide) jurisdiction, so that every plaintiff could sue in plaintiff's home court every out-of-state defendant who established an Internet web site"); *cf. Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801-02 (7th Cir. 2014) ("The creation of such *de facto* universal jurisdiction runs counter to the approach the Court has followed since *International Shoe*, and that it reaffirmed as recently as February 2014 in *Walden*.").

\* \* \*

For the foregoing reasons, the court denies Shippitsa's motion to reconsider the dismissal of defendants MoreNiche and Slack.

**SO ORDERED**.

June 5, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE